NOT FOR PUBLICATION                    [Docket Nos. 20 & 21]

## IN THE UNITED STATE DISTRICT COURT

## FOR THE DISTRICT OF NEW JERSEY

## CAMDEN VICINAGE

|  |  |
|---|---|
| JOSEPH F. SCOTTI, | : |
| Plaintiff, | : |
| v. | : Civil No. 08-3339 (RMB) |
| THE PRUDENTIAL WELFARE | : **OPINION** |
| BENEFITS PLAN, et al., | : |
| Defendants. | : |

Appearances:

Philip L. Faccenda
Faccenda Law Firm, LLC
601 Longwood Avenue
Cherry Hill, NJ 08002-2856

     Attorney for Plaintiff

David Bruce Gordon
Schoeman, Updike & Kaufman, LLP
60 East 42nd Street
39th Floor
New York, NY 10165

     Attorney for Defendants

**BUMB**, United States District Judge:

     This matter comes before the Court upon motions for summary judgment by the plaintiff, Joseph F. Scotti, (the "Plaintiff") as well as by the defendants, the Prudential Welfare Benefits Plan and Prudential Insurance Company of America, (the "Defendants")

1

both pursuant to Federal Rule of Civil Procedure 56(a).
Plaintiff brought this lawsuit for violation of the Employment
Retirement Income Security Act of 1974, as amended, 29 U.S.C.
Sec. 1001 et seq. ("ERISA"), to recover disability benefits to
which he maintains he was entitled under his employer's long-term
disability plan.  Because there is a disputed issue of material
fact on which the outcome of this case will turn, both motions
for summary judgment will be denied.

### FACTUAL BACKGROUND

The relevant facts are largely undisputed.  Plaintiff worked
as a financial service representative for defendant Prudential
Insurance Company of America ("Prudential").  (Compl. ¶ 4.)  In
that capacity, his principal duties included marketing and
selling insurance, annuities, and mutual fund investments to
potential and existing Prudential customers.  (Scotti Letter
[Docket No. 20, Ex. 16].)  He obtained short-term and long-term
disability insurance coverage from Prudential in connection with
his employment there.  (Schopfer Aff. ¶ 2 [Docket No. 21:12].)
This lawsuit arose from the denial of long-term disability
benefits to Plaintiff.

In November 2006, Plaintiff applied for and received short-
term disability benefits, based upon a diagnosis of major
depression and associated cognitive impairments.  (Id. at ¶ 6.)
The short-term benefits continued while Defendants considered

Plaintiff's application for long-term disability benefits,
through May 2007.  (Id. at ¶ 8.)  The Prudential Welfare Benefits
Plan (the "Plan") set the terms of Plaintiff's eligibility to
receive long-term disability benefits, stating:

> For the first 12 months, you will be considered Disabled
> under the LTD program if:
> -    You are unable to perform the Material and
>      Substantial Duties of Your Regular Occupation, due
>      to your sickness or injury, and
> -    You have a 20% or more loss in . . . earnings due
>      to the sickness or injury.
> After you receive LTD benefits for 12 months, you will be
> considered Disabled if due to the same sickness or
> injury, you are unable to perform the duties of any
> Gainful Occupation for which you are reasonably fitted by
> education, training or experience.

(Id. at ¶ 9.)  Under the Plan, the claimant bears the burden of
submitting evidence that establishes his disability.  (Id.
(citing the Plan, VII:37-38).)

Plaintiff sought medical treatment from, and his condition
was evaluated by, various physicians.  His treating physicians
prior to his application for benefits were internist Arthur
Sheppell and psychiatrist Nihal DeSilva, who first diagnosed
Plaintiff with major depression.  (Pl.'s Stat. Mat. Fcts. ¶¶ 2-3,
6.)  At the request of Dr. Sheppell, neuropsychologist Kenneth
Freundlich and neurologist Mark S. Diamond evaluated Plaintiff in
April and June 2006, respectively, and found a variety of
cognitive impairments.  (Id. at ¶¶ 5, 7.)  Dr. Freundlich
conducted a second examination of Plaintiff in May 2007, which
confirmed many of his previous findings.  (Id. at ¶ 8.)  He later

3

prepared a report, in August 2007, disputing the conclusions of doctors who had been retained by Defendants to evaluate Plaintiff's claim.  (Id. at ¶ 9; Freundlich Report 1-3 [Docket No. 20, Ex. 8].)  In the course of challenging the denial of benefits, Plaintiff was also evaluated by psychologist Victor Nitti and forensic psychiatrist Edward Tobe in January 2008. (Pl.'s Stat. Mat. Fcts. ¶¶ 18-19.)  All of these physicians corroborated Plaintiff's condition and submitted reports containing their findings to Defendants.

Plaintiff's claim received three levels of review by Defendants.  At the initial review stage, Defendants engaged psychiatrist Stephen Gerson to evaluate Plaintiff's condition based upon the reports of his physicians.  (Schopfer Aff. ¶ 12 [Docket No. 21:12].)  Dr. Gerson concluded that the evidence submitted was insufficient to establish a medical condition that would impair Plaintiff's ability to work.  (Gerson Report 5 [Docket No. 21:14].)  Notably, Dr. Gerson rejected the findings of Dr. Freundlich, because the "testing was done without validity indicators and may not be an adequate reflection of [Plaintiff's] true cognitive status."  (Id.)  In other words, Dr. Freundlich had not tested for the possibility that Plaintiff may have been fabricating or exaggerating his condition.  Based upon Dr. Gerson's report, Defendants denied Plaintiff's claim by letter dated May 23, 2007.  (Schopfer Letter [Docket No. 21:16].)

4

Plaintiff appealed the denial of benefits.  Defendants engaged neuropsychologist William B. Barr to evaluate Plaintiff's condition based upon the reports of his physicians, as well as that of Dr. Gerson.  (Formon Aff. ¶ 6 [Docket No. 21:5].)  Dr. Barr concurred with Dr. Gerson's conclusion, finding an "unusual pattern of variability and evidence of fluctuating effort" in the data collected by Dr. Freundlich, which, in Dr. Barr's judgment, raised the specter of "symptom fabrication or exaggeration" by Plaintiff.  (Barr Report 3 [Docket 21:6].)  Based upon Dr. Barr's report, Defendants denied Plaintiff's initial appeal by letter dated July 19, 2007.  (Formon Letter [Docket No. 21:7].)

Plaintiff then initiated a second appeal.  Defendants engaged psychiatrist Stuart Shipko to evaluate Plaintiff's condition based upon the reports of his physicians, as well as those of Drs. Gerson and Barr.  (Formon Aff. ¶¶ 17-18 [Docket No. 21:5].)  Notably, Plaintiff had submitted more evidence in support of a disability determination -- including a supplementary report from Dr. Freundlich and the new evaluations of Drs. Nitti and Tobe -- which were considered by Dr. Shipko. (Id.)  Nonetheless, Dr. Shipko affirmed the determinations of Drs. Gerson and Barr that the record did not support a finding of cognitive or psychological impairment.  (Shipko Report [Docket No. 21:8].)  Based upon Dr. Shipko's evaluation, Defendants denied Plaintiff's second appeal by letter dated March 24, 2008.

(Formon Letter [Docket No. 21:9].)

Six weeks later, on May 8, 2008, Plaintiff filed this lawsuit in the Superior Court of New Jersey, Camden County.  The matter was subsequently removed to this Court based upon federal-question jurisdiction.  (Notice of Removal ¶¶ 5, 7.)  The parties thereafter exchanged discovery and, in April 2009, filed the motions herein considered.

## LEGAL STANDARD

Summary judgment shall be granted if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); Hersh v. Allen Products Co., 789 F.2d 230, 232 (3d Cir. 1986).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "At the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  "In making this determination, a court must make all reasonable inferences in favor of the non-movant."  Oscar Mayer Corp. v. Mincing Trading Corp., 744 F. Supp. 79, 81 (D.N.J. 1990) (citing Meyer v. Riegel Products Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983)).  However, "the party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . .

6

pleading'; its response, 'by affidavits or as otherwise provided
in this rule, must set forth specific facts showing that there is
a genuine issue for trial.'"  <u>Saldana v. Kmart Corp.</u>, 260 F.3d
228, 232 (3d Cir. 2001) (quoting Fed. R. Civ. P. 56(e)).

**DISCUSSION**

### 1. <u>Standard of Review</u>

In an ERISA denial-of-benefits case, when the operative
benefit plan grants the administrator discretionary authority to
determine eligibility, a court's review is limited to evaluating
whether the administrator abused its discretion.  <u>Metro. Life
Ins. Co. v. Glenn</u>, 128 S. Ct. 2343, 2348 (2001); <u>Schwing v. Lilly
Health Plan</u>, 562 F.3d 522, 525-26 (3d Cir. 2009).[1]  Under this
deferential standard of review, a court may overturn an
administrator's decision "only if it is without reason,
unsupported by substantial evidence or erroneous as a matter of
law."  <u>Abnathya v. Hoffman-La Roche, Inc.</u>, 2 F.3d 40, 45 (3d Cir.
1993) (internal quotations omitted).  Furthermore, when reviewing
the merits of the administrator's decision, the only evidence a
reviewing court may consider "is the record made before the plan

---

[1] The parties dispute whether the U.S. Supreme Court's
decision in <u>Glenn</u> invalidates the Third Circuit's previous
"sliding scale" approach, which applied a less deferential
standard of review in cases where conflicts of interest affecting
plan administration are present.  If there were any doubt about
the effect of <u>Glenn</u>, Third Circuit decisions have clarified the
state of the law.  <u>See, e.g.</u>, <u>Schwing</u>, 562 F.3d at 525-26; <u>Evans
v. Employee Benefit Plan</u>, 311 Fed. Appx. 556, 559 (3d Cir. 2009).

administrator, [which] cannot be supplemented during litigation .
. . .” Kosiba v. Merck & Co., 384 F.3d 58, 67 n.5 (3d Cir.
2004). A court may consider extrinsic evidence only when
interpreting the plan, explaining medical terms and procedures,
or considering potential biases and conflicts of interest not
found in the record. Doe v. Hartford Life & Accident Ins. Co.,
No. 05-2512, 2008 WL 5400984, *6 (D.N.J. Dec. 23, 2008) (citing
Kosiba, 384 F.3d at 67; Epright v. Envtl. Res. Mgmt., 81 F.3d
335, 339 (3d Cir. 1996), O'Sullivan v. Metro. Life Ins. Co., 114
F. Supp. 2d 303, 310 (D.N.J. 2000)).

Because the benefits plan in this case grants the
administrator discretionary authority,[2] the Court looks to the
administrator's decision to determine if it is rational, legal,
and supported by substantial evidence.

### 2. **Structural Conflict**

As a preliminary matter, the Court must address the
structural conflict that exists when, as in this case, an
employer both administers and funds a benefits plan. The import
of such a conflict is obvious: "In such a circumstance, 'every

---

[2] The Plan states:
The Administrative Committee . . . (or each of [its]
delegates), shall have full discretionary authority to
determine all questions and matters that may arise in the
administration . . . of the Plan under [its] . . .
responsibilities or exercis[e] any authority under the Plan,
including without limitation the resolution of questions of
fact, interpretation or application.
(Prudential Welfare Benefits Plan § 3.2 [Docket No. 21:13].)

dollar provided in benefits is a dollar spent by . . . the employer; and every dollar saved . . . is a dollar in [the employer's] pocket.'" <u>Glenn</u>, 128 S. Ct. at 2348 (citing <u>Bruch v. Firestone Tire & Rubber Co.</u>, 828 F.2d 134, 144 (3d Cir. 1987)). In other words, employers may have a proverbial "thumb on the scale" when determining benefits eligibility, because it is in their financial interest to deny claims.  <u>Id.</u>  The Supreme Court has said that this factor should be considered when deciding if a benefits administrator abused its discretion in denying benefits. <u>Id.</u>

     Here, however, Defendants have taken steps to mitigate the weight of this consideration by minimizing the conflict of interest.  Prudential funds the Plan based upon mathematical projections and holds the funds in trust, separate from its other corporate monies.  (Schopfer Aff. ¶ 4 [Docket No. 21:12].)  The Plan is administered by a semi-independent unit (called the "Integrated Disability Management Unit" or "IDMU"), whose employees do not report to Prudential corporate agents.  (<u>Id.</u> at ¶ 5.)  Finally, in making benefits determinations, Prudential relies upon the professional opinions of independent doctors, which are selected through third-party agencies.  (Formon Aff. ¶¶ 5, 16 [Docket No. 21:5].)  Here in particular, Drs. Barr and Shipko had never before consulted for Defendants.  (<u>Id.</u> at ¶¶ 6, 17.)  With these safeguards in place, little concern remains that

9

Prudential denied Plaintiff's benefits to promote its financial interests.  See Vitale v. Latrobe Area Hosp., 420 F.3d 278, 283 (3d Cir. 2005) (holding that similar safeguards minimize the consideration of bias).  The mere fact that Defendants paid Drs. Gerson, Barr, and Shipko for their medical expertise does not alone render their professional determinations irrational or without substantial evidentiary basis.  But Defendants cannot, by pointing to its structural safeguards, evade the consideration of bias altogether.  The Court has no reason to doubt the integrity and independent professional judgment of Drs. Gerson, Barr, and Shipko.  However, bearing the knowledge that their client stood to gain by disputing Plaintiff's asserted medical condition, these doctors were not entirely disinterested arbiters.  Accordingly, the Court will remain mindful that some small but nontrivial bias may have influenced Defendants' decision to deny long-term disability benefits to Plaintiff.

### 3. Selective Reliance Upon Medical Evidence

Plaintiff raises several substantive objections to Defendants' denial of his application for long-term disability benefits.  The great weight of Plaintiff's argumentation amounts to a contention that Defendants selectively relied on certain medical evidence -- and ignored other evidence -- to reach a preordained conclusion.  In particular, Plaintiff criticizes the doctors engaged by Defendants for giving insufficient weight to

the medical opinions of Drs. Freundlich, Nitti, Tobe, and
Diamond, all of whom corroborated Plaintiff's medical condition.

The Court is certainly given pause by the sheer number of
doctors who have confirmed Plaintiff's condition.  However, the
Court "is not free to substitute its own judgment for that of the
[D]efendant[] in determining eligibility for plan benefits."
Abnathya, 2 F.3d at 45 (quotations omitted).  Accordingly, the
Court's review is limited to whether Defendants and their medical
experts had a rational basis for their disagreement with
Plaintiff's doctors.

Defendants' medical experts disputed the findings of Dr.
Freundlich because they determined that his test results were
unreliable.  Dr. Freundlich examined Plaintiff twice and produced
three written reports.  Drs. Gerson and Barr rejected Dr.
Freundlich's findings because, they said, his testing did not
establish that Plaintiff was not fabricating or exaggerating his
condition.  (Gerson Report 5 [Docket No. 21:14]; Barr Report 3
[Docket 21:6].)  Responding to the reports of Drs. Gerson and
Barr, Dr. Freundlich's final report, dated August 16, 2007,
argued that his testing of Plaintiff had, in fact, established
the results' validity.  At the final appeal stage, Dr. Shipko
considered the reports of Drs. Gerson and Barr, as well as those
of Dr. Freundlich -- including his August 16, 2007 rebuttal
(which is summarized in Dr. Shipko's report).  (Shipko Report 3

11

[Docket No. 21:8].)  Dr. Shipko nonetheless concurred that Dr. Freundlich had not established the validity of his results.  (Id. at 6-7.)  Notably, both Drs. Nitti and Tobe, who were retained by Plaintiff, also expressed doubts about the validity of Dr. Freundlich's results.  (Nitti Report 6, 8 [Docket No. 20, Ex. 18]; Tobe Report, 2 [Docket No. 20, Ex. 17].)

Defendants' medical experts disputed the findings of Drs. Nitti and Tobe because they determined that their test results, too, were unreliable.  Dr. Nitti's report readily concedes that the test results reflect Plaintiff's "sub-optimal effort" and are therefore "an invalid estimate of his current functioning." (Nitti Report 6 [Docket No. 20, Ex. 18].)  Dr. Tobe concurred that Plaintiff's "level of effort is such that a reliable and accurate estimate is not available."  (Tobe Report 2 [Docket No. 20, Ex. 17].)  Dr. Shipko regarded the opinions of Drs. Nitti and Tobe that Plaintiff suffered from a major depressive disorder and pseudodementia as "speculation" in light of the questionable test results on which they were based.  (Shipko Report 4 [Docket No. 21:8].)

There seems to be a latent disagreement between Drs. Gerson, Barr, and Shipko, on the one hand, and Drs. Freundlich, Nitti, and Tobe, on the other, about the medical criteria to diagnose major depressive disorder, pseudodementia, and other cognitive impairments.  The apparent disagreement is:  Can these medical

12

conditions be diagnosed by personal, firsthand examinations, without reliance upon valid test results?  It is notable that Drs. Nitti and Tobe both disputed the reliability of Dr. Freundlich's test results, but nonetheless concurred with his diagnosis based, it appears, upon their personal (unquantifiable) interaction with Plaintiff.  Dr. Shipko dismissed these opinions as "speculation", because they were not premised upon reliable testing.

Courts within the Third Circuit diverge on the importance of personal examinations by doctors advising insurers.  In Hession v. Prudential Ins. Co. of America, the Third Circuit held that an "insurer's heavy reliance on a paper review, when nearly all of the plaintiff's treating physicians had found her disabled, was a procedural irregularity that warranted heightened scrutiny."  307 Fed. Appx. 650, 654 (3d Cir. 2008) (citing Post v. Hartford Ins. Co., 501 F.3d 154, 166 (3d Cir. 2007)).  A number of district courts, however, have expressed reluctance to require personal medical examinations.  See, e.g., Vega v. Cigna Group Ins., No. 06-5841, 2008 WL 205221, *7 (D.N.J. Jan. 23, 2009) (Pisano); Schreibeis v. Retirement Plan for Employees of Duquesne Light Co., No. 04-969, 2005 WL 3447919, *5 (W.D. Pa. Dec. 15, 2005); Sollon v. Ohio Cas. Ins. Co., 396 F. Supp. 2d 560, 586-87 (W.D. Pa. 2005) (citing cases for the proposition that personal medical evaluations are not required because "[a] plan administrator does

13

not have a duty to gather information in addition to that
submitted with the claim").[3]  These precedents mainly address
disability claims for physical injuries;[4] mental illness, by
contrast, may be uniquely suited for diagnosis by personal
examination.

When doctors exercising professional judgment disagree with
one another, it is not for the Court to resolve the dispute by
interposing its own judgment.  <u>Cheeseman v. Baxter Int'l Inc.</u>,
No. 08-1547, slip op. at 10 n.3 (D.N.J. May 8, 2009) (citing
<u>Abnathya</u>, 2 F.3d at 45).  For this reason, the Court will not
second-guess the determination that Dr. Freundlich's test results
were invalid.  However, if a valid diagnosis could be based upon
a personal examination alone, Dr. Shipko's finding that Plaintiff
did not establish a disability -- a finding premised upon the
absence of valid test results -- would be irrational and without
basis in substantial evidence.  The Court draws a distinction
here between <u>necessary</u> and <u>sufficient</u> conditions.  Dr. Shipko
seems to proceed on the assumption that valid test results are a

---

[3] Under the terms of the Plan, Plaintiff bears the burden to
offer evidence establishing his condition.  (Schopfer Aff. ¶ 9
(citing the Plan, VII:37-38).)  Defendants contend that requiring
Defendants' doctors to conduct a personal assessment of
Plaintiff's condition would, in effect, shift the burden to
Defendants to disprove Plaintiff's asserted condition.  The Court
disagrees.  If a valid diagnosis can be founded upon a personal
examination, then the examining doctor's report should be
sufficient to satisfy Plaintiff's burden.

[4] <u>Vega</u> is a notable exception.  <u>See</u> 2008 WL 205221, *2-3.

14

necessary condition to diagnose Plaintiff's asserted disability.
Drs. Freundlich, Nitti, and Tobe seem to proceed on the
assumption that valid test results are merely a sufficient
condition for a diagnosis.  If the latter assumption is correct,
then Dr. Shipko's medical finding would be irrational and without
basis in substantial evidence.  However, none of the doctors --
nor the parties to this litigation -- have addressed this
question squarely.  Whether major depressive disorder,
pseudodementia, and associated cognitive impairments can be
validly diagnosed by personal examination is therefore a genuine
issue of material fact on which the outcome of this case will
turn.  Because the Court cannot decide genuine issues of material
fact on summary judgment, the motions herein considered must be
denied on this basis.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.
242, 248 (1986).[5]

### 4. <u>Failure to Provide Job Description</u>

Finally, Plaintiff contends that Defendants' benefits

---

[5] Plaintiff also argues that Defendants lacked substantial
evidence to deny benefits because it failed to consider the
report of Dr. Diamond.  Plaintiff inflates the importance of Dr.
Diamond's report, however, which is distinguished only for its
brevity and conclusory analysis, amounting to little more than a
net opinion of all other evidence before Drs. Gerson, Barr, and
Shipko.  Moreover, Dr. Diamond's findings were summarized in Dr.
Nitti's report, which was considered by Dr. Shipko.  (Nitti
Report 3 [Docket No. 20, Ex. 18].)  Accordingly, the omission of
Dr. Diamond's report does not render the evidence underlying
Defendants' decision insubstantial.

determination lacked substantial evidence because Defendants did not supply their medical experts with a description of Plaintiff's job duties.  This omission is a curious oversight, but, here, amounts to nothing more.  Because Drs. Gerson, Barr, and Shipko doubted that Plaintiff suffered from any functional impairment, they had no occasion to consider whether an impairment would inhibit Plaintiff's job performance.  See Gambino v. Arnouk, 232 Fed. Appx. 140, 146 n.2 (3d Cir. 2007) (noting that an insurer is not obligated to inquire into a claimant's work-related duties when the claimant has not established a disability in the first instance).  Moreover, Dr. Tobe's report discusses Plaintiff's job duties at length.  (Tobe Report 1 [Docket No. 20, Ex. 17].)  If Dr. Shipko found Plaintiff's duties relevant to his analysis, he could easily have discerned them from Dr. Tobe's report.  Accordingly, the failure to consider Plaintiff's particular job duties will not invalidate Defendants' benefits determination.

## CONCLUSION

     For the reasons set forth herein, the motions for summary judgment by both Plaintiff and Defendants shall be denied.  An appropriate order will issue this date.


Date: July 23, 2009              **s/Renée Marie Bumb**
                                 RENÉE MARIE BUMB
                                 UNITED STATES DISTRICT JUDGE